## CLARK v. LARKIN.

1. EVIDENCE: ADMISSION. Admissions made in general conversations not bearing directly upon the matter in controversy, should be received with great caution.

2. PRACTICE IN SUPREME COURT. The appellant in chancery causes should assign errors, as required by the seventh rule, but the assignment in many cases may be very general.

*Appeal from Des Moines District Court.*

FRIDAY, OCTOBER 21.

On the 8th May, 1856, the firm of Lischey & Clark, purchased of Larkin & Vanorsdale, a small parcel of land, with a mill upon it, for which they gave their security, to the vendors severally, in proportion to their interests, of one third to Vanorsdale, and two thirds to Larkin; at the same time they bought of Larkin a tract of about five acres, with a house upon it, which is known as "the homestead," for which they were to pay $700, paying $300 in hand and giving their partnership note for the remaining $400; as security for the payment of the notes, on both these purchases, they executed a deed of trust to Crocker, (with power to sell, in case of non-payment, on the mill property, and another on the homestead lot. The note of $400 having fallen due, Crocker was proceeding to sell, having advertised, when Clark filed this bill to injoin the sale. An injunction was allowed, but upon hearing, it was dissolved and the bill was dismissed, and the complainant appeals.

*D. Rorer,* for the appellant.

*Crocker & Smyth,* for the appellee.

WOODWARD, J.—Lischey & Clark being unable to fulfill the stipulations concerning the first payment to be made, the above contract of sale of the mill property was rescinded and the notes and securities were canceled and delivered up. This took place on or about the 18th July, 1856. Clark contends that the sale of the house and lot was also rescinded at the same time, and that this $400 note of Lischey & Clark, was agreed to be canceled and delivered up, but that this was omitted through mistake. He avers that he substituted his own note for this. It appears in the case, that at some time and in some manner, the house and lot became the sole property of Clark, as between him and Lischey, but it is not shown distinctly when and how. This, however, is

Clark v. Larkin.

to be regarded as a fact, and it undoubtedly took place when those two had their settlement.

On the rescision of the above sale of Larkin & Vanorsdale to Lischey & Clark, of the mill property, Vanorsdale received back and held his interest of one third, and Larkin sold his two thirds to the same Clark and one Foulks, each of them taking severally one half of Larkin's interest, or one third of the whole. Each gave his note to Larkin for the sums due from them respectively, but these notes were each signed by the other two as sureties. There was found to be due from Vanorsdale to Larkin, the sum of $210, on their previous partnership business, for which Vanorsdale gave his note signed by Clark and Foulks.

The main question in the case is, whether the sale of the house and lot to Lischey and Clark was rescinded, when that of the mill was, and whether the note of Lischey and Clark was to have been canceled, Clark giving his own, with security, in its place? The respondent denies the allegations of the bill distinctly, and gives his version of the transaction.

To sustain his position relative to this note of Lischey & Clark, the complainant offers in evidence the deposition of Lischey himself. This is objected to, and is rejected as inadmissible. We need not inquire into this question, for we are clearly of the opinion that, even admitting it, the evidence weighs strongly in favor of the respondent. Lischey testifies that this note was to have been delivered up, and that Clark gave his own note in the place of it, and that it was only through his (L.'s) negligence that it was not taken up. This oath stands against the explicit denial of the defendant, and it is supported by some circumstances. When Larkins wished to borrow money of Barnes, the latter asked him if he could not get money " at the mill," and he replied that there was nothing due him there. This may be taken to refer to what Clark and Foulks owed him on the mill purchase, and perhaps (as plaintiff claims) to what Clark owed him on the house. It was claimed to have been at a time when the note of Lischey & Clark was overdue, if it still existed.

Again, in June, 1857, being in want of a moderate sum of money, and addressing Clark, Foulks and Vanorsdale, who were together at the mill, he inquired if they could accommodate him, saying that he was aware that there was nothing due him from them. No particular debt was referred to, and this was after the note of Clark & Lischey was due, if he still held it as he claims. These circumstances, in corroboration of Lischey's testimony are worthy of notice, and are entitled to consideration; but beside the inherent weakness of this kind of evidence, they are overbalanced by those shown on the other side. That but little reliance can be placed upon such accidental and unexplained facts, is strongly illustrated by the contradictory acts and sayings of this same party, in reference to the same matter.

On the other side of this question is the positive denial of the defendant. Then this is strongly supported by the testimony of Vanorsdale and Foulks.

The first of these was the owner of one third of the mill, and was a party to the rescision of the first contract of sale, that to Lischey and Clark; and the latter is one of the purchasers at the second sale. Both of these testify that the sale of the house and lot was wholly separate from that of the mill; that they had no connection; that the house and lot were the sole property of Larkin; that in the settlement, or the rescision of the first sale, and the making of the second, in July, 1857, there was nothing done about the house and lot, and that they were not referred to further than by Larkin saying that "he had a deed of trust on them and this was sufficient," to which Lischey answered, he should think it ought to be.

Further, Vanorsdale and Foulks make a statement of the details of the business of the second purchase, showing the amounts paid, and those for which they gave notes respectively, precluding the idea entirely that the amount of the note of Lischey & Clark, given for the homestead, was included in those given by them, or in the money paid by them, at that time. This testimony, coming from a source

possessed of such means of knowledge, far more than outweighs the circumstances adverted to as tending to sustain the statement of Lischey. There is also another consideration of weight which cannot be overlooked. The title to the homestead had been conveyed to Lischey and Clark, at the purchase on the 8th May, and there could be no rescision without a reconveyance, whilst none such is shown, and no trust deed on the house to Larkin to secure the $400, is shown other than the original one from Lischey & Clark.

This is the substance of the case in which we have endeavored to present the controlling questions without the details, arrayed in the argument of the defendant. Allowing the testimony of Lischey to balance the answer of Larkin, the evidence of Vanorsdale and Foulks, both direct as to the leading fact, and also in giving the particulars of the transaction, explaining each sum paid and the meaning of each note given, is quite too weighty and too satisfactory to be overcome by the circumstances which tend to support the testimony of Lischey—accordingly we are compelled, by more than a mere balance of evidence, to affirm the decree of the District Court.

The assignment of errors by the appellant, in this cause, though in equity, was correct. This is our practice, as being in accordance with the rule, which makes no exception of equity causes, although in these the assignment may often be very general.

Decree affirmed.